Thomas J. Weaver, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 6, 1981, before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Richard K. Hohn,* with him *Joseph Lurie, Galfand, Berger, Senesky, Lurie & March,* for petitioner.

*Stephen B. Lipson,* Assistant Attorney General, with him *John Kupchinsky,* Assistant Attorney General, *Richard Wagner,* Chief Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, June 22, 1981:

The petitioner[1] seeks review of a decision of the Unemployment Compensation Board of Review (Board) which denied him benefits on the grounds that he voluntarily terminated his employment.[2]

The petitioner's employer laid off a number of employees due to lack of work on January 23, 1980, and the petitioner's seniority rank would have placed him among the furloughed employees except that a provision of the existing collective bargaining agreement exempted him from such a layoff because of his posi-

---

[1] Thomas J. Weaver.

[2] Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).

tion as recording secretary for the local union. The petitioner resigned from his union position on January 24, 1980, thus forfeiting his exempt status, and when he returned to work the next day he was laid off. The petitioner's claim for unemployment benefits was denied by the Office of Employment Security and, after a hearing, that determination was affirmed by the referee. On further appeal, the Board upheld the denial of benefits, finding that the petitioner had voluntarily terminated his employment in that he himself had "set into motion the process which caused him to be unemployed."

The petitioner claims that his unemployment was related directly to his employer's reduction in work force and that his resignation did nothing more than place him in a more vulnerable seniority position, as occurred in the case of *Jarrett Unemployment Compensation Case,* 182 Pa. Superior Ct. 491, 128 A.2d 184 (1956).

We cannot agree.

In *Jarrett,* the claimant lost all of her seniority rights with respect to layoffs when she married, as was provided by the collective bargaining agreement in effect. Approximately 22 months later, the employer laid off a number of employees, including the claimant, and the court there held that her employment was not directly caused by her marriage, but was, instead, a consequence of the employer's reduction in work force, which was a circumstance over which the claimant had no control.

We believe that the case of *Fisher v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 518, 393 A.2d 1304 (1978), is more analogous to the present situation. The claimant there signed off a specilaized job and entered the employer's labor pool and as a result he was laid off the next day. The claimant knew that his action would result in the

layoff and this Court affirmed the Board's denial of benefits due to the claimant's voluntary termination of his own employment.

In the instant case, which presents a situation similar to that in *Fisher*, the petitioner's separation from employment immediately followed his resignation as union secretary and there is no dispute that he knew that his action would cause such a result. Furthermore, because the employer's reduction in work force preceded the petitioner's resignation, he obviously could have continued working as long as he retained his union office and such retention was directly within his personal control and not under the control of his employer.

We will therefore affirm the decision of the Board because we believe that the petitioner's resignation constituted a voluntary termination of his employment.

ORDER

AND Now, this 22nd day of June, 1981, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.

———

DISSENTING OPINION BY JUDGE CRAIG:

I respectfully dissent because claimant's union office resignation merely relegated him to his actual seniority. The employer's lack of work was the basic cause of the layoff.

In *Labor and Industry Department v. Unemployment Compensation Board of Review*, 133 Pa. Superior Ct. 518, 521, 3 A.2d 211, 213 (1938), cited with approval in *Hammerstone v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 256, 378 A.2d 1040 (1977), the court stated:

[t]he phrase *'voluntarily leaving work'* in Section 402(b)(1) means that 'he left of his own motion; he was not discharged. It *is the opposite of* a discharge, dismissal or *layoff by the employer* or other action by the employer severing relations with his employees. . . .' (Emphasis supplied.)

Here it was the layoff by the employer which effected claimant's removal from the work force. There can be no question that claimant's change of union status would not have idled him if there had been work for him to do.

Claimant's act in this case related only to his officership in his union, a matter independent of his job. In *Fisher v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 518, 393 A.2d 1304 (1978), on the other hand, claimant's employment relationship was the precise subject of claimant's job transfer action.

Just as the court declined to explore the wisdom of claimant's marriage in *Jarrett Unemployment Compensation Case,* 182 Pa. Superior Ct. 491, 128 A.2d 184 (1956), we should decline to explore the wisdom of claimant's divorce from union office here.[1] The marriage in *Jarrett* and this claimant's action are equally external to the employer-employee relationship.

If claimant is to be considered as voluntarily quitting, there must have been continuing work available to him; here that work was available only if claimant

---

[1] With respect to the circumstances motivating his decision, claimant testified that, in addition to his union office, he was secretary of his local volunteer fire company, having been such for four years, and was an elected councilman of his borough, and that his volunteer, union, and public offices entailed conflicting responsibilities and schedules. All of his outside-of-work activities, as well as his personal decisions concerning them, are not germane to the employment relationship issue.

maintained union office, not merely union membership as in *Gulick v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 73, 388 A.2d 1154 (1978). By denying compensation because claimant knew the probable consequences of his resignation, the court is requiring as a condition of eligibility for benefits that a claimant continue in union office from and after any time when his incumbency there affects his senority status, notwithstanding the fact that the sole basis of any relationship between that incumbency and continued employment is a lack of work over which the claimant has no control. The Unemployment Compensation Act "is not designed or intended to implement or impede collective bargaining between unions and employers," *D'Amato v. Unemployment Compensation Board of Review,* 196 Pa. Superior Ct. 76, 78, 173 A.2d 680, 682 (1961); our interpretation should maintain the Act's neutrality as regards collective bargaining activity.

The facts of this case readily distinguish it from *Lybarger Unemployment Compensation Case,* 203 Pa. Superior Ct. 336, 201 A.2d 310 (1964) (rotating layoffs created by share-the-work plan) and *Unemployment Compensation Board of Review v. Budzanoski,* 21 Pa. Commonwealth Ct. 535, 346 A.2d 864 (1975) (misbehavior in union office).

Accordingly, we should not bar compensation.